Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4438 | **DATE** | 1/14/2002 |
| **CASE TITLE** | Dendema vs. Denbur | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, Westfield's motion to stay certain discovery [66-1] is denied. Westfield's motion to compel compliance with discovery [71-2] is granted in part and denied in part. Denbur must produce its billing records from the Dendema action as well as those that reflect conversations with Dendema prior to the start of the lawsuit, and also produce the Dendema litigation file. Finally, Dendema must produce information related to the Light Tip patent and trademark to the extent that it has not already done so. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 1 5 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 84 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 1/14/2002 | |
| | | | date mailed notice | |
| KF | courtroom deputy's initials | | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENDEMA, A.B., and
DAN V. ERICSON

   Plaintiffs,

v.

DENBUR, INC.
   Defendant.

-----

WESTFIELD INSURANCE COMPANY,
an Ohio Corporation,
   Intervenor.

Case No. 00 C 4438

Magistrate Judge
Michael T. Mason

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action brought by Westfield Insurance Company ("Westfield") against its insured, Denbur, Inc. Denbur was the defendant in a patent and trademark infringement suit brought by a company called Dendema, A.B., over the sale and use of a dental device known as a "Light Tip." Westfield intervened in the case between Dendema and Denbur (the "Dendema action") to ask the Court to declare that the insurance policy Westfield issued to Denbur does not cover any loss Denbur incurs in the Dendema lawsuit (the "declaratory action").[1] Denbur filed a counterclaim against Westfield, alleging that Westfield's filing of the declaratory action is an "unreasonable and vexatious claims practice" in violation of the Illinois Insurance Code. Before us are two

---

[1] Dendema and Denbur settled the Dendema action in July, 2001. Denbur seeks from Westfield reimbursement of its costs of defending the suit from January 2001 until the case settled, as well as the monies it paid in settlement.

1

motions by Westfield. The first one asks that we stay certain discovery propounded by Denbur in the declaratory action – which discovery allegedly concerns Denbur's counterclaim only – until after Judge Kocoras has decided the merits of Westfield's complaint. The second motion is a motion to compel Denbur's compliance with discovery propounded by Westfield. We will address each motion in turn.

Westfield contends that most of Denbur's interrogatories and document requests deal solely with its counterclaim of vexatious claims practice and do not seek information relevant to Westfield's contractual argument that it is not liable to pay any loss Denbur incurred in the Dendema action. Additionally, Westfield argues that not only are the requests not relevant to the declaratory action, but they also seek information protected by the attorney-client and work product privileges. If Westfield wins the declaratory action, then Denbur's counterclaim becomes moot, *i.e.*, if Westfield was correct in refusing to pay Denbur's insurance claim because it was not covered by the insurance policy, its decision could not have been a vexatious or unreasonable claims practice.

After reviewing the relevant law, we find that Westfield must respond to Denbur's interrogatories and document requests. The fact that some of the requests relate to Denbur's counterclaim and not to Westfield's case-in-chief does not require that this discovery be stayed until a later date. It is true, as Westfield points out, that an action for fees and costs pursuant to Section 155 of the Illinois Insurance Code may be brought after the merits of a coverage dispute have been decided. *Peerless Enterprise, Inc. v. Kruse*, 738 N.E.2d 988, 996 (2nd Dist. 2000). However, in *Peerless*, the question of whether the insurance company committed an unreasonable claims practice did not arise until after the main dispute was decided. In this case, Denbur's counterclaim places Westfield's actions

at issue now, and Westfield has cited no case compelling us to decide its coverage question before we even allow discovery to go forward on whether its declaratory action was justified.[2]

Westfield also argues that much of the discovery sought by Denbur is privileged. It contends that because it did not even become aware of the Dendema action until well after it began, any documentation it may possess regarding its own analysis of the coverage issue is protected by the work-product privilege (and possibly the attorney-client privilege as well). This may be true, but this motion is not the correct means to protect such information. Instead, Westfield should answer all of Denbur's discovery as completely as possible, creating a privilege log to identify those documents it believes are privileged.

Westfield's original motion implies that to the extent it has any privileged documents responsive to Denbur's requests, they might be producible if Judge Kocoras decides against Westfield in the declaratory action. However, in its reply, Westfield retreats from this position and argues that a privilege log will not protect the documents since they are so irrelevant to the case, they do not even need to be identified. To prove its point, Westfield basically argues the merits of its case – stating that because the law supports its decision to deny coverage, it has a bona fide coverage dispute with Denbur and thus it could not have committed an unfair claims practice. Thus, Westfield contends, Denbur's

---

[2] Indeed, it is possible that some of the discovery sought by Denbur could be relevant to Westfield's original allegations as well. We can imagine a scenario in which Westfield has information that is relevant to both its contractual argument that the insurance policy does not cover Denbur's loss as well as to the investigation it undertook to come to its conclusion regarding liability. Westfield contends that it has no other information other than that it has already produced to Denbur. If that is the case, Westfield should so indicate in a formal response to the discovery requests.

3

requests are irrelevant because it will lose on its counterclaim.

This is a circular argument that would require us to examine (if not decide) the merits of the declaratory action in order to determine if we can reach the issues raised in the counterclaim. That question is for Judge Kocoras to decide. And as we pointed out in a footnote, it is possible that some of the disputed discovery could be relevant to Westfield's main case, in addition to its relevance to the counterclaim. Thus, we will not stay any discovery on relevance grounds.

Denbur's interrogatories seven through eleven ask Westfield to set forth the facts supporting various allegations in the complaint. Westfield objects on the grounds that such requests call for legal arguments and conclusions. We disagree that these requests are not within the proper scope of discovery. It is true that a party does not have to answer a question that delves into purely legal issues unrelated to the facts of the case. *See Schaap v. Executive Industries, Inc.*, 130 F.R.D. 384, 388 (N.D.Ill., 1990) (*citing* Fed.R.Civ.P. 33(b)(advisory committee notes)). However, an interrogatory "is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact." *Id.* In *Schaap*, the Court ordered the defendants to respond to interrogatories that asked for the factual basis behind some of their answers to the complaint. This is just what Denbur seeks here and Westfield must respond.

**Motion to Compel**

Westfield has also filed a motion to compel Denbur to respond to some of its own discovery requests. Specifically, Westfield seeks three categories of documents:1)

production of all billing documents for legal services rendered by the firm Bell, Boyd and Lloyd ("BBL") to Denbur or its president, Fari Maissami, from January 1, 1994 to the present; 2) production of BBL's entire litigation file for the Dendema Action; and 3) production of any other BBL documents which pertain to legal services it rendered to Denbur or Maissami including, but not limited to, opinions and other documentation related to the patent and trademark at issue in the Dendema suit.

Westfield makes two arguments in favor of production. First, it says that the information it seeks can help it to prove its coverage defenses that Denbur was aware of the distinct chance of being sued over the Light Tip prior to obtaining the insurance policy (the "known loss" defense) and that Denbur did not immediately inform Westfield of the suit when it became aware that it had a potentially covered claim (the "first publication" defense). Additionally, Westfield contends that even if it loses the declaratory action and is ordered to reimburse Denbur's losses, it is entitled to a trial on the reasonableness of the fees and costs connected with the defense of the Dendema action. Thus, it needs the documents it seeks to help prepare for such a possibility. In response, Denbur makes two arguments against production, that the requests are overbroad and that some of them implicate the attorney-client or work-product privilege. We will discuss each category of documents Westfield seeks in light of these arguments.

**Billing**

Westfield seeks production of all billing records from Denbur's attorneys regarding not only the defense of the Dendema action, but also relating in any way to the Light Tip patent and trademark. This request is overbroad. We agree that Denbur must produce all billing records relating to the Dendema action from July, 2000 (when the original

5

complaint was filed) through the settlement of the case. Denbur must also produce any pre-Dendema action bills that reflect communications by BBL with anyone at Dendema. The procurement of the Light Tip patent and trademark is not at issue in this litigation and we will not order Denbur to produce seven years of bills relating to its registration of the patent or the trademark.

Although Westfield implies that if it loses the on merits of its declaratory action, it intends to contest the amount of reimbursement sought by Denbur for its attorney's fees, additional discovery on this issue is not relevant at this time. Unlike the documents relevant to Denbur's counterclaim discussed above, the reasonableness of BBL's billing is not currently before the Court. Further, even if it was, we see no reason to order production of billing records for which Denbur does not seek reimbursement.

**Dendema Litigation File**

Westfield argues that the Illinois case *Waste Management, Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322 (1991), as well as the insurance policy's cooperation clause, compel Denbur to provide Westfield with BBL's entire litigation file concerning the Dendema action, including materials potentially protected by the attorney-client and/or the work-product privileges. In *Waste Management,* the insured purchased insurance policies that provided indemnity for defense costs arising out of any lawsuit concerning his ownership of several hazardous waste sites. After settling one such lawsuit, the insured sought reimbursement from the insurance company, which denied coverage. The insured sued his insurer over the coverage issue, and during discovery, refused to provide the insurer with documents related to the underlying hazardous waste litigation, citing the

attorney-client and work-product privileges. *Id.* at 324-25.

The Illinois Supreme Court found that neither privilege had any applicability to the case because the insurer and the insured had had a common interest in defending the underlying litigation – even though the insurer provided no defense and did not participate in the underlying litigation. *Id.* at 328. The Court also based its holding on a cooperation clause in the relevant insurance policy similar to the one at issue here. *Id.* at 327.[3]

*Waste Management* would govern our decision in this case and require Denbur to produce its BBL's Dendema litigation file if the material Westfield sought was only covered by the attorney-client privilege. However, because it seeks a litigation file in a case related to the instant case before us, we must resolve the question of whether and when work-product material is producible. Because *Waste Management* was a state case, the Court did not have to differentiate between material protected by the attorney-client privilege and that protected by the work-product privilege, and thus it treated both as identical. Although Illinois law may control the attorney-client analysis here, federal law governs questions of work-product privilege that arise in federal court. *See CSX Transportation, Inc. v. Lexington Insurance Co.,* 187 F.R.D. 555, 560 (N.D.Ill. 1999) *citing A.O. Smith Corp. v. Lewis, Overbeck & Furman,* 1991 WL 192200 (N.D.Ill. 1991) (holding that *Waste Management's*

---

[3] The cooperation clause in the Westfield Insurance Policy states in part:

**2.　Duties in the event of Occurrence, Offense, Claim or Suit**
  c.　You and any other involved insured must:

  (1)　Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

  (2)　Authorized (sic) us to obtain records and other information;...

7

analysis did not apply in federal cases concerning the work-product privilege).

In this case, the cooperation clause of the insurance policy creates a contractual relationship between Denbur and Westfield that overrides any work-product privilege.[4] *See Abbott Laboratories v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 409 (N.D.Ill. 2001).[5] We agree that information from the Dendema action may be relevant to Westfield's coverage defenses and thus Denbur must produce its litigation file from the Dendema action.

**Other Denbur Patent and Trademark Information**

Finally, Westfield seeks all information in BBL's possession related to Denbur or its president, including opinions and other documents related to the Light Tip patent and trademark that BBL may have provided to Denbur prior to the initiation of the Dendema litigation. Westfield explains that BBL's Denbur files may demonstrate the level of sophistication of its president, Mr. Maissami, with regard to intellectual property matters, which could help Westfield prove its coverage defense of "known loss." Denbur contended in its brief that at most, Westfield is entitled to information from BBL's files regarding the Light Tip trademark, since the Dendema amended complaint stemmed solely

---

[4] There is a question as to whether the Dendema litigation file should be considered "work product" in this litigation at all. Although the declaratory action and the Dendema action are somewhat related, it is not a certainty that documents created during the Dendema action were created in anticipation of the declaratory action. Indeed, Denbur would probably argue that it did not foresee any sort of coverage dispute at all. Thus, the Dendema litigation file may contain some attorney-client material, but may not constitute work product at all.

[5] We note that we do not find *Abbott's* second reason for ordering production, that the insured had waived the privilege issue by putting the subject matter of the privileged documents at issue, to be applicable here. Even if Westfield loses the declaratory action and subsequently objects to the amount of reimbursement Denbur seeks, Denbur itself has not put the reasonableness of the costs "at issue."

8

from the registration of the trademark, and did not concern the patent. Denbur states that it has produced, and will continue to produce, such trademark information. During oral argument, counsel for Denbur indicated that it had also produced the Light Tip patent file, and would identify such documents by Bates number. We find that any other information Westfield seeks is too attenuated from its claims and we will not order its production.

For the above reasons, we deny Westfield's motion to stay discovery. We grant Westfield's motion to compel in part and deny it in part. Denbur must produce its billing records from the Dendema action as well as those that reflect conversations with Dendema prior to the start of the lawsuit, and also produce the Dendema litigation file. Finally, Denbur must produce information related to the Light Tip patent and trademark to the extent it has not already done so. It is so ordered.

/s/ Michael T. Mason
Michael T. Mason
United States Magistrate Judge

Date: January 14, 2002